**Ronald LINGER, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. 16A04–8605–CR–00130.**

Court of Appeals of Indiana,
Fourth District.

June 1, 1987.

---

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Ronald Linger was convicted of four counts of theft, Class D felonies, and sentenced to the maximum four years on each count, to be served concurrently. Linger appeals his convictions on the grounds that: (1) an accomplice witness' testimony was inherently incredible; (2) the trial court failed to give a jury instruction on accomplice testimony; (3) the trial court improperly admitted a toolbox without proper identification; (4) the trial court improperly played an audio tape for the jury in open court after deliberations had begun; and (5) the trial court erred in considering mitigating and aggravating circumstances in sentencing.

We affirm Linger's convictions. We remand to the trial court to vacate the sentences previously entered and to state its reasons for enhancing the basic term of 2 years imprisonment on four counts of theft and to articulate the balance of mitigating and aggravating circumstances or, alternately, to resentence the defendant to the presumptive sentence on each of the four theft convictions.

## FACTS

Ronald Linger was convicted by jury of four counts of theft, Class D felonies. Two of these counts involved the theft of 386 pounds and 926 pounds of tin anodes from Bohn Aluminum and Brass Corporation, Linger's employer, in August and September, 1981. Linger was also convicted of the theft of neighbor John Hitchel's toolbox on November 19, 1982 and neighbor George Simmond's dog, Frank, a mixed beagle-dachshund, on December 3, 1982. The trial court sentenced Linger to the presumptive two years and enhanced the presumptive term by an additional two years, totaling 4 years on each of the 4 counts, to be served concurrently. The

court identified two statutory mitigating factors (defendant led a law-abiding life for a substantial period of time prior to commission of the crimes and incarceration would cause undue hardship to his dependents). The court then increased the basic term of 2 years to 4 years due to two statutory aggravating factors (Linger's prior felony convictions, and the fact that a suspended sentence would depreciate the seriousness of the offenses) and two non-statutory aggravating circumstances (theft from employer where Linger was in a position of trust, and the fact that Linger denied his guilt and showed no remorse).

### Issues

Linger appeals his conviction and sentence, raising five issues, which we have restated, for review:

I. Whether there was sufficient evidence to support the verdict because the testimony of an accomplice-witness was inherently incredible.

II. Whether the trial court erred in refusing to give the jury defendant's tendered instruction that accomplice testimony should be cautiously received and carefully scrutinized.

III. Whether State's Exhibit 3, the allegedly stolen toolbox, was improperly admitted into evidence because it was not properly identified.

IV. Whether the trial court erred by playing an audio tape for the jury after it retired for deliberations because the tape was subject to improper use and unduly prejudiced the defendant.

V. Whether the trial court erred in assessing aggravated sentences for each four counts of theft because it did not properly articulate the weighing process for each sentence.

### DECISION

I. *Sufficiency of the Evidence*

■ Linger maintains there was insufficient evidence to convict because the testimony of tin theft accomplice Michael Wright, obtained through a plea agreement

with the State, was inherently incredible and unworthy of belief.[1] Linger claims Wright "unloaded" the majority of the blame for the crimes upon him by testifying the theft of the tin anodes was entirely Linger's idea and Wright's involvement was minimal; and that Wright turned over 85% of the profits of the anode thefts to Linger. Linger points out that Wright was employed as maintenance electrician at Bohn, and had access to all of the companies facilities; Wright by his own admission took most of the risk by carrying the anodes in his truck and later selling them, by himself, to scrap yards in Columbus and Louisville; Linger was broke after the thefts but Wright was driving a new van; bolt-cutters like the ones used in the anode thefts were found in Wright's garage; tin anodes taken in a third Bohn theft were found in Wright's woodpile. Linger argues that Wright was caught with the tin anodes, arrested, and charged with the thefts, then decided it was in his best interests to cooperate with police to arrest and convict Linger, and that Wright had nothing else to trade for a lesser sentence. Linger also notes that Wright's testimony was necessary to show the theft of the dog and the toolbox to establish Linger knew the property he conveyed to others was stolen.

The State asserts Wright's credibility does not rise to the level of being inherently incredible and the evidence was both probative and sufficient to support the jury's verdict.

As an appellate tribunal, we neither reweigh the evidence nor judge the credibility of witnesses when an appellant challenges the sufficiency of the evidence, but consider only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Freeze v. State* (1986), Ind., 491 N.E.2d 202. We review the evidence for the purpose of determining, as a question of law, whether there is substantial evidence of probative value from which a jury could reasonably infer or find the

existence of each material element of the crime in order to reach the conclusion that the accused has been proved guilty beyond a reasonable doubt. *Baker v. State* (1956), 236 Ind. 55, 138 N.E.2d 641. Substantial evidence of probative value is evidence that has the qualities of directness and freedom from uncertainty. *Vuncannon v. State* (1970), 254 Ind. 206, 258 N.E.2d 639.

The rule of law defining proof beyond a reasonable doubt is well settled:

"It requires the trier of facts to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the highest concern and importance to his own nearest, dearest and most important interests under circumstances where there was no compulsion or coercion to act at all."

*Easton v. State* (1967), 248 Ind. 338, 344–45, 228 N.E.2d 6, 11. A reasonable doubt "is not a fanciful doubt—it must be more than a speculation or whim. It is a doubt which arises from the evidence, the lack of evidence, or a conflict in the evidence." *Brown v. State* (1977), 266 Ind. 82, 360 N.E.2d 830, 836. A reasonable doubt of guilt must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla. *Harris v. State* (1978), 269 Ind. 672, 382 N.E.2d 913.

Here, the principal evidence which establishes that Linger committed the tin anode thefts is the testimony of accomplice Michael Wright.[2] Uncorroborated testimony of an accomplice will support a conviction. *Taylor v. State* (1981), Ind., 425 N.E.2d 141; *Kilgore v. State* (1979), 271 Ind. 257, 391 N.E.2d 820. While the testimony of Wright and Linger was in direct opposition, it was for the jury to weigh the evidence and determine the credibility of the witnesses. *Taylor, supra; Bond v. State* (1980), 273 Ind. 233, 403 N.E.2d 812. As long as the evidence and the inferences which may be drawn therefrom permit a reasonable trier of fact to find the exist-

---

1. Wright presented testimony regarding all four counts of theft.

2. The theft of the dog and the toolbox were supported by the fact that Linger was in posses-

sion of this stolen property. Wright testified that Linger knew the dog and toolbox were stolen.

ence of each element of the crime beyond a reasonable doubt, the conviction will stand. *Taylor, supra; Robinson v. State* (1977), 266 Ind. 604, 365 N.E.2d 1218. This is not a case where this court is confronted with inherently improbable, coerced, equivocal or wholly uncorroborated testimony of "incredible dubiosity." *See, Budd v. State* (1986), Ind., 499 N.E.2d 1116; *Rodgers v. State* (1981), Ind., 422 N.E.2d 1211; *cf. Penn v. State* (1957), 237 Ind. 374, 146 N.E.2d 240 (uncorroborated testimony of prosecuting witness improbable and incredible). We do not find Wright's testimony inherently incredible and conclude the evidence in this case adequately supports the four theft convictions.

## II. *Jury Instruction*

■ Linger claims the trial court erred in refusing to read to the jury his tendered instruction that accomplice testimony should be cautiously received and carefully scrutinized. Linger asks this court to reconsider the rule applied by our Supreme Court in *Taylor v. State, supra,* which provides the trial court's refusal to give an instruction to the jury that accomplice testimony should be cautiously received and carefully scrutinized was proper because such an instruction would "invade the province of the jury by commenting on the competency of or the weight to be given the testimony of any particular witness who testifies in a case." *Taylor, supra,* at 143. We decline the defendant's invitation, and find no error in the trial court's refusal to give such an instruction.

## III. *Evidence Properly Admitted*

■ Linger contends State's Exhibit 3, a toolbox, was improperly admitted into evidence because it was not positively identified as belonging to and stolen from John Hitchel. The State responds that Exhibit 3 was sufficiently identified to be admissible.

The record reveals that John Hitchel was unable to positively identify State's Exhibit 3 as his stolen toolbox. Mr. Hitchel testified that "its either the same one or one just like." (Record p. 203) Hitchel noted that the tools recovered from the toolbox were of the same types and brands as those he had in his toolbox before it was stolen. (Record, p. 204-5, p. 207-8).

While the toolbox in question was not positively identified as the stolen item, the circumstantial evidence was strong that it was the same. Admission of physical evidence is governed by the same rules of relevancy and materiality governing admission of testimonial evidence. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78. All evidence is relevant if it tends to prove or disprove a material fact in the case or sheds any light on the guilt or innocence of the accused. *Cox v. State* (1985), Ind., 475 N.E.2d 664. The exhibit was sufficiently identified to allow its admission and to permit the jury to decide if it was, in fact, the stolen item.

## IV. *Audio Tape Played for Jury*

■ Linger next contends the trial court erred by playing an audio tape, State's Exhibit 10, for the jury after it began its deliberations because the audio tape was subject to improper use by the jury and unduly prejudiced Linger. He argues the replaying of the tape placed undue emphasis on it to the exclusion of evidence received at trial, including evidence which impeached one of the two speakers on the tape, and therefore violated the standard set forth in *Thomas v. State* (1972), 259 Ind. 537, 289 N.E.2d 508. The State asserts the replaying of the tape was proper as IND.CODE 34-1-21-6 gave the jury access to any testimony or evidence received at trial and the reexamined portion of the evidence was both limited and done in open court.

State's Exhibit 10 is a cassette tape recording of a telephone conversation between Linger and Martin Yeager. At trial during cross-examination of Linger, the tape was played for the jury. Linger does not admit his guilt in the tape, rather he denies being involved. In the tape, however, Yeager places Linger at the scene of the burglary. After retiring, the jury requested it be allowed to listen to the tape again. The trial court, over objection, played the tape for the jury in open court.

Linger asserts the trial court erred and urges the rationale of *Thomas, supra,* applies here. Our Supreme Court explained the *Thomas* rule as follows:

"In *Thomas* a witness' written statements were allowed to be taken to the jury room during deliberation. We held this to be error. *Thomas,* however, clearly explains that the reason for not allowing documentary evidence into the jury room is the danger that the presence of certain testimony in printed form, to which the jurors could continually refer, will result in undue weight being attached to that testimony. This rationale does not require that documentary evidence (or testimony) not be re-read to the jury."

Indiana Code § 34-1-21-6 (Burns 1973) provides in relevant part:

"After the jury has retired for deliberations, if there is a disagreement between them as to any part of the testimony ... they may request the officer to conduct them into court, where the information required shall be given ..."

We construe this statute to provide that the judge must, on the jury's request, have read to them any properly admitted testimony or documentary evidence. This holding is compatible with the A.B. A.'s *Standards for Criminal Justice, Trial by Jury,* § 5.2(a) at p. 134 (Approved Draft 1968), the comments to which note that this is the usual practice. *Id.* at pp. 134-36."

*Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1168, 1197.[3]

Applying the *Thomas* rule to this case, I.C. 34-1-21-6 required the judge, on the jury's request, to replay the properly admitted audio tape in open court. We find no error.

## IV. *Sentencing*

Linger argues the court did not properly articulate the weighing process for each of the four sentences he received. The State responds that the trial court found the existence of aggravating factors so the increased sentence on all four counts from 2 years to 4 years, to be served concurrently, was entirely proper. The trial court is presumed to have considered the risk that the defendant will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the defendant when the court imposes the presumptive sentence. IND.CODE § 35-38-1-7 (Burns Repl.1985); *Keys v. State* (1979), 271 Ind. 52, 390 N.E.2d 148. The trial court is required to include within the record a statement of its reasons for the sentence it imposes only when the court finds aggravating circumstances or mitigating circumstances exist. I.C. 35-38-1-3 (Burns Repl. 1985); *Hammons v. State* (1986), Ind., 493 N.E.2d 1250.

The trial court's statement of reasons must include the following three elements: (1) it must identify all of the *significant* mitigating and aggravating circumstances;[4] (2) it must state the specific reason why each circumstance is considered to be mitigating or aggravating; and (3) it must articulate that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances to determine if the mitigating circumstances offset the aggravating circumstances. *Hammons, supra; Townsend v. State* (1986), Ind., 498 N.E.2d 1198; *Jones v. State* (1984), Ind., 467 N.E.2d 681.

The trial court made the following record after hearing testimony at the sentencing hearing:

3. *See also, Counceller v. State* (1984), Ind., 466 N.E.2d 456; *Douglas v. State* (1982), Ind., 441 N.E.2d 957.

4. The trial court is not bound to accept defendant's assessment of mitigating circumstances and it cannot be said that the court failed to consider mitigating factors because it failed to give full effect to its intendment. *Gibbs v. State* (1984), Ind., 460 N.E.2d 1217, 1222. *See also, Wilkins v. State* (1986), Ind., 500 N.E.2d 747

(trial court's failure to address issue of mitigating circumstances, including undue hardship to dependents, in sentencing statement did not require remand as all of defendant's alleged mitigating factors were highly disputable in nature, weight, or significance). The record here indicates the court properly identified the two mitigating circumstances applied and did not fail to identify any other significant statutory mitigating circumstances.

"COURT: Well I've got before me the statute that sets out the aggravating or mitigating circumstances and frankly if I read down the list of mitigating I don't know that any of them apply with perhaps one exception."

"The first one is the crime neither caused nor threatened serious harm to persons or property or the person did not contemplate it would do so. I don't think that applies to this case where you have the theft of property, certainly a harm to the property right of Bohn Aluminum. Crime number two, the crime was the result of circumstances unlikely to recur, I can't say that that's true knowing that I know about this case. The victim of the crime induced or facilitated the offense. I don't think there's evidence that I heard that the management of Bohn Aluminum had anything to do with causing this offense to occur. Fourth, there is substantial grounds tending to excuse or justify the crime though failing to establish a defense, that is not applicable. The person acted under strong provocation, no evidence of that, quite the contrary. The evidence seems to be that this is pretty well thought-out and planned in advance. Person has no history of delinquency or criminal activity or he has led a law abiding life for a substantial period before commission of the crime, now that may apply in this case. Although he does have a history of criminal activity, it is true that some nineteen, well, no the offense was in what, 1981?

MR. BASS: Yes it was '81 when....

COURT: For a period of sixteen years.

MR. BASS: Some in '81, some in '82.

COURT: Well that applies, that cuts both ways I guess, because he does have a history of criminal activity but some time has passed. Seven, this person is likely to respond affirmative to probation or short term imprisonment. I don't know whether that's appropriate in this case or not. Number eight the character and attitude of the person indicate that he is unlikely to commit another crime. I don't believe that's the case. Person has made or will make restitution to the victim of his crime for the injury, damage, or loss sustained. No evidence of that. And number ten imprisonment of the person will result in undue hardship to his dependents. Imprisonment I think always results in undue hardship to his dependents. As far as his dependents are concerned that's probably true. As far as aggravating circumstances the only two that appear to apply is that the person has a history of criminal activity. And here again we're concerned with the staleness of those convictions and delinquency determinations which were some fifteen to twenty years prior to the offenses in this case. But I don't think the Court can ignore that those occurred and I'm not going to ignore them. I think they're a factor. The other one that appears to apply to me is the imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the offense. I think that's the most compelling factor before the Court today in this sentencing, the same as it was Friday in the sentencing on Mike Wright. And without elaborating unduly I'll say again that I believe that this defendant was hired by this company for work for them. They expected things from him and he expected certain things from them. There was a bond of trust that ran both ways and Mr. Linger violated that. And he stole from his employer. And as I said Friday I think stealing from someone who has entrusted you with certain things is worse than stealing from somebody you have no relationship to. They're both reprehensible but I think this is worse. Another factor that was apparent or was appropriate Friday in the Wright sentencing which it pertains today is the issue of credibility. I guess I heard everything that Mr. Linger testified to in his trial and while there may have been some things that were true statements, I feel pretty strongly that there were very few of them that fit that description. Well I'm going with Mr. Linger is to sentence him to imprisonment for a determinate period of two years on each count and based upon the

aggravating circumstances that I mentioned today, I'm going to add two years to the sentence in each count for a total of four years but I'm going to order that the sentences run concurrently. So that the total sentence will be four years. I don't necessarily think Ronnie Linger was any more involved in this whole episode that Mike Wright but I'll say this for Wright, for whatever reasons, and I think I know them as well as anybody else, he finally admitted his guilt, at least some of his guilt, this man still maintains his innocence which he's entitled to but he's doing so in the face of some pretty compelling evidence to the contrary. And six people have found him guilty. And I have no reason to second guess their judgment. That will be the sentence of the Court. I don't know if he has any credit, gets credit for six days already spent."

(Record, pp. 993–1000).

■ The trial court identified two statutory mitigating factors which apply to all four theft convictions: (1) Linger has led a law abiding life for a substantial period before commission of these crimes; (2) imprisonment will result in undue hardship to Linger's dependants.[5] I.C. 35–38–1–7(c). The trial court then identified two statutory aggravating circumstances; (1) the defendant's history of criminal activity, and (2) imposition of a reduced sentence would depreciate the seriousness of the crime; and two non-statutory aggravating factors, (1) the lack of credibility of Linger's testimony at trial, his refusal to admit guilt and lack of remorse, and (2) theft was from

Linger's employer who had placed his trust in defendant.

**[6]** If the trial court chooses to exercise its discretion, pursuant to our sentencing statutes, it must make a statement of its reasons for selecting the sentence it imposes. *Page v. State* (1981), Ind., 424 N.E.2d 1021. The statement of reasons envisioned by our sentencing statute must consist of more than a mere finding that certain subsections are satisfied:

" 'When the sentencing judge is required to make a statement of the reasons for imposing a particular sentence, two important goals are served. First, the judge is confined to proper grounds for either increasing or decreasing the presumptive sentence provided for the offense; and second, the appellate court is enabled to determine the reasonableness of the sentence imposed under the circumstances.' *Ambercrombie v. State,* (1981), Ind. [275 Ind. 407], 417 N.E.2d 316, 319.

'In order to carry out our function of reviewing the trial court's exercise of discretion in sentencing, we must be told of his reasons for imposing the sentence which he did.' *Green v. State* (1981), Ind., 424 N.E.2d 1014 (On Remand). 'This necessarily requires a statement of facts, in some detail, which are peculiar to the particular defendant and the crime, as opposed to general impressions or conclusions. Of course such facts must have support in the record.' "

*Page, supra,* 424 N.E.2d at 1023.

The two statutory mitigating factors, that Linger has led a law abiding life for a

---

5. We note that the trial court's statement "Imprisonment I think *always* results in *undue* hardship to his dependants" is incorrect. (emphasis added). The nature of the hardship—whether slight or serious—is dependent upon the facts of each case. However, the record here supports a finding of undue hardship to Linger's dependents. The Pre-Sentence Investigation Report indicates Linger is married to Ruth Linger and they have three children aged 7, 11, and 12 years; Ruth has two children, aged 17 and 18 years, from a previous marriage; and four children are living at home. Linger testified at the sentencing hearing that he and his wife have 5 children and one grandchild dependent upon them for support; and that Lin-

ger has one child from a previous marriage whom he is obligated to support. Ruth has worked for nine years and earns $180 a week at KB Specialty Foods. Linger had been employed at Bohn Aluminum for fourteen years. On February 10, 1984, when he was charged with theft, Bohn suspended Linger from work. Linger remained unemployed. The Lingers have no savings and their debts, in addition to the $9700 balance on the home mortgage, total approximately $25,000. Clearly, the record reveals evidence that the Lingers are financially unstable and that Linger's imprisonment will result in undue economic hardship to his five to eight dependents.

substantial period prior to commission of the crimes and his imprisonment would result in hardship to his dependents, were properly identified by the trial court and applied to all four theft counts. The evidence supports the courts findings of mitigating circumstances. The trial court also properly applied the statutory aggravating circumstances of prior criminal activity and that imposition of a reduced sentence would depreciate the seriousness of the offenses to the two counts of aluminum theft. However, the trial court's statement of reasons for imposing an enhanced sentence based upon the two statutory aggravating factors does not refer to the theft of the dog or the toolbox, and therefore does not enable the appellate court to draw a conclusion, one way or the other, as to its reasonableness.

■ The trial court cited two non-statutory aggravating factors; (1) defendant's denial of guilt, lack of credibility, and lack of remorse, and (2) defendant stole from his employer where he was in a position of trust. Linger correctly asserts that he has steadfastly maintained his innocence, pled not guilty, elected to proceed to trial and that a guilty verdict does not require him to confess his crime. A defendant's refusal to testify may not be considered to support an inference of guilt, but the trial court may nevertheless later consider lack of remorse as an aggravating factor in imposing sentence. *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, *reh. den.* 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730; *Spranger v. State* (1986), Ind., 498 N.E.2d 931; *Gibbs v. State* (1984), Ind., 460 N.E.2d 1217; *Hoehn v. State* (1984), Ind.App., 472 N.E.2d 926; *but see, Guenther v. State* (1986), Ind. App., 495 N.E.2d 788. Linger's failure to accept responsibility or show remorse may be regarded by the trial judge as showing defendant might act similarly if confronted with the situation in the future. The trial court, however, may not consider Linger's denial of guilt as an aggravating factor and the trial court erred in doing so here.

■ A second non-statutory aggravating circumstance, that defendant stole from his employer where he was in a position of trust, was improperly applied to enhance the sentences on the aluminum thefts. Our legislature, in recodifying and combining specific Class D theft statutes in 1971, chose to consolidate them and not to differentiate between embezzlement, theft by deception, or other forms of theft detailed individually in prior statutes. The legislature has defined the various forms of theft as equally serious and deserving of the same penalty. Earlier embezzlement statutes were for the protection of employers against frauds committed by those employees in whom the employer has confided trust. *Schoenrock v. State* (1923), 193 Ind. 580, 141 N.E. 351. However, the legislature removed this consideration when repealing the embezzlement statute and enacting our general theft statute. The underlying goal of criminal and sentencing statutes to provide uniform treatment among those who are convicted and sentenced for the same crime. An element of the crime may not be used as an aggravating factor to enhance the sentence. *Townsend v. State* (1986), Ind., 498 N.E.2d 1198.[6] This is analogous to differentiating among the forms of theft included in our general theft statute. *Townsend* recognizes that the trial court may consider the particularized circumstances of the crime's factual elements, and the sentence may be enhanced if an element is particularly egregious. We find that *Townsend* mandates the conclusion that the mere mention of the elements of the crime of theft, *e.g.* the theft was from an employer or the theft was from an innocent stranger, is not such a particularized circumstance as can be

6. In *Townsend,* possession of a gun and threatening the victim, which were elements of the crimes for which defendant was convicted, could not, standing alone, be considered as aggravating circumstances; if enhanced sentence resulted from trial court's consideration of particularized circumstances of those factual elements, then the trial court was required to specify, in its sentencing statement, reasons why the use of the gun or the manner in which the victim was threatened constituted aggravating circumstances which would support imposition of an enhanced sentence.

used to enhance a presumptive 2 year theft sentence. In effect, the trial judge in merely reciting an element as an automatic aggravating circumstance is legislating and creating an automatic four year sentence for that form of theft. Here, the trial court made clear that all thefts from employers were more serious than thefts from others and required an enhanced sentence. This was improper.[7] We conclude that the fact that the defendant stole from his employer is a fact of the crime but may not properly be used as an aggravating circumstance to enhance the sentence unless the trial court establishes, in its sentencing statement, reasons why the theft from an employer is any more grievous than theft from another and justifys imposition of an enhanced sentence. As with the elements of the crime, the trial court must detail its consideration of the particular circumstances of theft from an employer.

The trial court has also failed to articulate, for all four theft counts, that it evaluated and balanced the mitigating factors against the aggravating factors to determine if the mitigating circumstances offset the aggravating circumstances.

■ We affirm the four convictions and remand to the trial court to vacate the sentences previously entered and to either resentence the defendant, stating its reasons for enhancing the basic sentence of 2 years on each theft count and articulating the balance of mitigating and aggravating circumstances, or, alternately, to resentence the defendant to the presumptive period on each of the four theft counts.

Remanded.

YOUNG and NEAL, JJ., concur.

---

**7.** *See also, Bresson v. State* (1986), Ind.App., 498 N.E.2d 91 (age of victim in child molesting conviction used as aggravating factor); *Pavey v. State* (1985), Ind.App., 477 N.E.2d 957 (age of victim in child molesting conviction used as aggravating factor); *Washington v. State* (1981), Ind., 422 N.E.2d 1218 (manner in which gun was used upheld as aggravating factor in armed robbery conviction).