

FILED

Dec 18 2017, 11:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tony McMiller, | December 18, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1706-CR-1192 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable Linda Brown, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 49G10-1612-CM-47917 |

**May, Judge.**

[1] Tony McMiller appeals his convictions for Class A misdemeanor theft[1] and Class B misdemeanor disorderly conduct.[2] He argues the State did not present sufficient evidence to prove he committed Class A misdemeanor theft because it did not prove he had the intent to deprive Scotty's Brewhouse of the value of the food and drink he consumed. He argues the State did not present sufficient evidence to prove he committed Class B misdemeanor disorderly conduct because it did not prove he was so unreasonably loud as to disturb others in the restaurant. We reverse in part and affirm in part.

## Facts and Procedural History

[2] On December 13, 2016, McMiller and Karri[3] Garcia spent the day together, purchasing multiple items with Garcia's husband's credit card. McMiller and Garcia went to Scotty's Brewhouse, ordered food and drink, and ate the food and drink they ordered. When the bill was presented, Garcia tried to pay with her husband's credit card, but it was declined. The manager of the restaurant was called to the table and learned McMiller and Garcia could not pay the bill. The manager called the police.

---

[1] Ind. Code § 35-43-4-2(a) (2014).

[2] Ind. Code § 35-45-1-3(a)(2) (2014).

[3] The briefs and the transcript spell Garcia's name differently, but the charging information spells her name as indicated in this opinion.

[3] Officer Justin Musser arrived at the scene and Officer Christopher Pickerrell arrived shortly thereafter. After learning Garcia's credit card had been declined, Officer Musser asked McMiller if he was going to pay the bill, and McMiller offered his SSI debit card, which was also declined. McMiller said he called his sister and she told him she would come to the restaurant and pay the bill after she got off work. She did not do so. Garcia and McMiller attempted to get other restaurant patrons to pay their bill, but no one would pay it.

[4] After approximately one hour, Officers placed McMiller and Garcia under arrest. Because it was cold outside, Officer Musser sat McMiller on a bench inside the restaurant while he waited for the wagon to arrive to transport McMiller to the Marion County Jail.

[5] McMiller was "talking loudly, upset obviously because he was going to jail." (Tr. at 28.) He also started "bothering the patrons that were sitting in the booth behind them trying to get them to engage in conversation and pay for his bill." (*Id*.) Officer Musser asked him to stop bothering the people in the booth, but McMiller persisted.

[6] The State charged McMiller with Class A misdemeanor theft, Class A misdemeanor resisting law enforcement,[4] and Class B misdemeanor disorderly conduct. On May 9, 2017, the trial court held a bench trial. At the end of the bench trial, the trial court found McMiller guilty of Class A misdemeanor theft

---

[4] Ind. Code § 35-44.1-3-1(a)(1) (2016).

and Class B misdemeanor disorderly conduct. The trial court sentenced McMiller to concurrent sentences of 365 days, with 315 days suspended to unsupervised probation, for theft and 180 days, with 130 days suspended to unsupervised probation, for disorderly conduct.

# Discussion and Decision

[7] When reviewing sufficiency of the evidence in support of a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Binkley v. State*, 654 N.E.2d 736, 737 (Ind. 2007), *reh'g denied*. The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Id*. We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id*. at 147.

## I. Class A Misdemeanor Theft

[8] "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class A misdemeanor." Ind. Code § 35-43-4-2(a) (2014). "A person engages in conduct 'intentionally' if, when he engages

in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a) (1977). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability he is doing so." Ind. Code § 35-41-2-2(b) (1977). The *mens rea* element of a crime "may be proven by circumstantial evidence alone, and may be inferred from the facts and circumstances of each case." *Baxter v. State*, 891 N.E.2d 110, 121 (Ind. Ct. App. 2008).

[9] The State presented evidence that McMiller and Garcia consumed food and drink from Scotty's Brewhouse and that payment was not made for that food and drink. However, the State did not present evidence that, at any time during the incident, McMiller behaved in a way that could suggest he consumed the food and drink with an intent to deprive Scotty's Brewhouse of the value thereof.

[10] McMiller argues he was "in the wrong place at the wrong time with the wrong person." (Br. of Appellant at 11.) He testified he went to Scotty's Brewhouse at Garcia's invitation and she told him she would pay with the credit card they had been using all day. Thus, he claims, he did not have the requisite intent to commit Class A misdemeanor theft when he exerted control over Scotty's food and drink because he never intended to deprive Scotty's of the value of its food or drink. Our courts have long reversed "on insufficiency grounds, convictions that were based merely upon the defendant being in the 'right place at the wrong time.'" *McMahal v. State*, 609 N.E.2d 1175, 1178 (Ind. Ct. App. 1993). This case is one such predicament.

After Garcia's credit card was declined, McMiller attempted to use his SSI debit card to pay for the meal, but it was declined. Officer Pickerrell testified he learned on the scene that McMiller "thought Ms. Garcia was taking McMiller out to dinner[.]" (Tr. at 20.) Officer Pickerrell admitted "it was fair to assume that if a person is being taken out to dinner they do not think that they have to pay for it[.]" (*Id.*) Officer Pickerrell and McMiller testified the card Garcia submitted for payment worked properly earlier in the day.

McMiller called his sister, who indicated she would pay the bill, but she did not. McMiller asked other patrons of the restaurant to pay the bill, and they did not. Officer Musser testified another patron came up to him and told him they would like to pay for McMiller and Garcia's meal, but they were not permitted to do so. Thus, the bill was not paid.

Multiple witnesses testified McMiller was calm throughout the incident until he was arrested and did not make an attempt to leave at any time. He "wasn't refusing to pay – he did not have the ability to pay and believed he had made other arrangements for payment." (Br. of Appellant at 12). This is unlike the facts in *Bowman v. State*, 468 N.E.2d 1064 (Ind. Ct. App. 1984), where Bowman was convicted of theft after attempting to leave a store with a saw for which he did not pay. We affirmed Bowman's conviction for theft, observing that in addition to attempting to leave the store with the saw by "walking briskly," *id*. at 1066, toward the exit, Bowman provided a receipt for the wrong date, claimed his companion paid for it, and "insisting he had been in the catalog

department and had not realized they came inside." *Id*. Such deception is not present in this case.

[14] Further, in searching for a case analogous to the facts before us, we found a dearth of cases wherein a person was convicted of theft when the person ate a meal and was then unable to pay for the meal, but remained at the restaurant attempting to find a way to pay. More common are defendants who leave without trying to pay for the food or drinks consumed. *See, e.g.*, *People v. McDonald*, 689 N.Y.S.2d 600, 601 (N.Y. 1999) (defendant convicted of theft when he "ordered alcoholic beverages, drank them, and left without paying the bill ($126.33)"). McMiller did not leave or even attempt to leave; instead, he tried to obtain the money to pay the bill.

[15] While it is not our role to reweigh the evidence or judge the credibility of witnesses, we also cannot sustain a conviction for a crime the State did not prove. *See Martin v. State*, 157 Ind. App. 380, 385, 300 N.E.2d 128, 131 (1973) (while a conviction may rest on circumstantial evidence, we must be careful to review the record as to not place in jeopardy "the liberty of many innocent persons"). Here, the State presented sufficient evidence McMiller consumed food and drink for which he thereafter could not pay, and thus McMiller deprived Scotty's Brewhouse of the value of the food and drink. *See* Ind. Code § 35-43-4-2(a) (elements of theft). However, the State has not proven McMiller had the intent to deprive Scotty's of the value when he consumed the food and drink. Therefore, we must reverse. *See Umphrey v. State*, 63 Ind. 223, 226

(1878) (intent to deprive a person of their property must be present to convict for theft).

### Class B Misdemeanor Disorderly Conduct

[16]  To prove McMiller committed Class B misdemeanor disorderly conduct, the State had to provide sufficient evidence McMiller (1) recklessly, knowingly, or intentionally (2) made "unreasonable noise" and continued "to do so after being asked to stop." Ind. Code § 35-45-1-3(a)(2) (2014). McMiller argues the State did not prove he disturbed other patrons. He also claims that "any noise made by him in these circumstances was not unreasonable[.]" (Br. of Appellant at 13.) His arguments are requests for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

[17]  The State presented evidence McMiller was "talking loudly, upset obviously because he was going to jail." (Tr. at 28.) In addition, he was "disrupting the booth next to . . . where he was sitting." (*Id*. at 33.) Officer Musser testified McMiller was

> talking loudly to get their attention and then asking them to help him out and pay his bill and the table . . . ignoring [sic] him and he kept trying to talk louder to get their attention . . . I said "hey leave them alone, you know they are here enjoying their dinner" and he kept going and kept going. And finally you know, the people engaged and it was like you know we don't have the - we are not going to help you.

(*Id*. at 33-4.) We conclude the State presented sufficient evidence McMiller committed Class B misdemeanor disorderly conduct. *See Martin v. State*, 499 N.E.2d 273, 274 (Ind. Ct. App. 1986) (evidence sufficient to support conviction of disorderly conduct when Martin spoke in a "very loud voice" in a public place where others had gathered and continued to do so after being asked to stop).

# Conclusion

[18] The State did not present sufficient evidence McMiller consumed food and drink with an intent to deprive Scotty's Brewhouse of the value therefor and thus the evidence was insufficient to prove McMiller committed Class A misdemeanor theft. However, the State presented sufficient evidence McMiller committed Class B misdemeanor disorderly conduct. Accordingly, we reverse McMiller's theft conviction and affirm his disorderly conduct conviction.

[19] Reversed in part and affirmed in part.

Vaidik, C.J., and Altice, J., concur.