# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 13 2019, 10:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Shon Hudson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

November 13, 2019

Court of Appeals Case No.
19A-CR-583

Appeal from the Marion Superior Court

The Honorable Sheila Carlisle, Judge

Trial Court Cause No.
49G03-1801-F3-261

**May, Judge.**

[1] Shon Hudson appeals his conviction of Level 3 felony armed robbery.[1] He argues the State presented insufficient evidence to sustain his conviction. We affirm.

# Facts and Procedural History

[2] On November 7, 2017, Kurt Everett dropped his daughter off at school and stopped at Philadelphia Steak and Fries in Indianapolis for breakfast. Everett was an auctioneer, and he planned to meet with dealers later in the day to buy used farm equipment. Everett parked near the front door and walked into the restaurant. When it was his turn, Everett ordered food and his total came to $8.12. Everett took out his money clip and asked the cashier if the store took hundred-dollar bills, and the cashier indicated that he could provide change for a hundred-dollar bill. Shon Hudson and Teeiana Webster were standing nearby waiting for their food, and Webster placed change on the counter in order to cover the twelve-cent portion of Everett's bill. As Everett stepped to the side to wait for his food, he noticed Hudson and Webster were staring at him. When his order was called, Everett got his food and sat at a table by the window to eat it.

[3] After Everett finished eating, he threw away his trash and went back out to the parking lot. As Everett sat in his truck preparing to leave, Hudson walked up to

---

[1] Ind. Code § 35-42-5-1.

Everett's partially open window and said he needed directions. When Everett reached over to the middle console to retrieve his phone so that he could give Hudson directions, Hudson produced a gun. Hudson shoved the gun into Everett's chest and said, "Give me those hundreds." (Tr. Vol. II at 34.) Everett asked if he could keep his credit cards, and Hudson said, "I'm not f[***]ing with you." (*Id*. at 35.) Everett then gave Hudson $992.00 in cash and Hudson walked away in the direction of a nearby hotel. Everett called a friend, drove to a nearby parking lot, and then called 911. Officer Mark Mennonno responded to Everett's 911 call, and Everett gave him a description of the robber.

[4] Detective Edward Bottoms of the Indianapolis Metropolitan Police Department also investigated the robbery. He obtained surveillance video from inside the Philadelphia Steak and Fries restaurant. From this footage, he was able to produce a "be on the lookout" ("BOLO") sheet with still photos of the robbery suspect and his companion. (*Id*. at 72.) The BOLO sheet was released to the public, and an anonymous tip identified the robbery suspect as Shon Hudson and his companion as Teeiana Webster. The anonymous tip also gave addresses and telephone numbers for Hudson and Webster. On November 30, 2017, Everett met with Detective Bottoms and discussed the incident. Detective Bottoms compiled and showed Everett a photo array, and Everett identified Hudson as the person that robbed him.

[5] Detective Bottoms called the phone number for Hudson on December 4, 2017. He also called Webster. He left a voicemail message for each, but he did not receive a return call. On December 5, 2017, Hudson and Webster rode a bus

from Indianapolis to Atlanta in order to visit with Hudson's relatives. While in Atlanta, Webster learned that her picture was on the news. Webster and Hudson returned to Indianapolis on December 25, 2017.

[6] In the course of his investigation, Detective Bottoms obtained a search warrant to get information from the phone carrier regarding the telephone number associated with Hudson. Detective Adam Franklin analyzed the data the phone carrier produced in response to the search warrant. These records allowed Detective Franklin to determine which cell phone tower facilitated a particular call, so that Detective Franklin could determine the general area where the cell phone was located when it was used. At 8:36 a.m. on November 7, 2017, Hudson's phone received a call and a phone tower near the crime scene facilitated the call, and at 9:01 a.m. that day, Hudson made a call from approximately six miles away from the crime scene.

[7] The State charged Hudson with armed robbery on January 3, 2018, and the police arrested Hudson on February 10, 2018. The court held a one-day jury trial on January 17, 2019. At trial, Webster testified that she and Hudson got food at the Philadelphia Steak & Fries, walked out to a car where their friend, Alec Guyette, was waiting for them, and they drove off. Guyette also testified that the three of them went to Philadelphia Steak & Fries, he waited in the car while Hudson and Webster went inside to pick up their food, and then they drove off after they got their food. The jury returned a verdict of guilty and the court entered a judgment of conviction. The court imposed a nine-year sentence, with three years suspended. The court ordered Hudson to serve the

first four years of his sentence inside the Indiana Department of Correction, followed by two years in community corrections.

# Discussion and Decision

[8] When reviewing the sufficiency of the evidence to support a conviction, we look only to the probative evidence and the reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). The evidence does not need to overcome every hypothesis of innocence. *Id*. at 147. We do not reweigh the evidence nor do we assess the credibility of the witnesses. *Stokes v. State*, 801 N.E.2d 1263, 1271 (Ind. Ct. App. 2004), *trans. denied*. "The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact." *Id*. The testimony of a single eyewitness is enough to sustain a conviction. *Emerson v. State*, 724 N.E.2d 605, 609-10 (Ind. 2000), *reh'g denied*. "It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve." *Ferrell v. State*, 746 N.E.2d 48, 51 (Ind. 2001). We will reverse "only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *McMiller v. State*, 90 N.E.3d 672, 675 (Ind. Ct. App. 2017).

[9] A person commits Level 3 felony armed robbery if he knowingly or intentionally takes property from another person by using force or threatening to use force, while armed with a deadly weapon or in a way that causes bodily injury to another person. Ind. Code § 35-42-5-1. Everett gave a physical description of Hudson to police. He identified Hudson, both in-court and in a

photo array, as the person who robbed him. Surveillance footage captured Hudson in the Philadelphia Steak & Fries at the same time as Everett on November 7, 2017. Everett observed Hudson walk towards his truck, put a gun to his chest, and demand money. It was reasonable for the jury to believe Everett's testimony and conclude Hudson committed the crime of armed robbery. Hudson's presence at the scene of the crime at the time of the crime along with Everett's testimony is sufficient evidence to sustain his conviction. *See Hubbard v. State*, 719 N.E.2d 1219, 1221 (Ind. 1999) (holding testimony of the victim, the sole eyewitness, was sufficient to support convictions).

[10] Hudson emphasizes that the State did not produce any witnesses to the crime to substantiate Everett's account of the robbery even though the robbery occurred outside a busy restaurant. Hudson also points out that Everett testified Hudson and Webster ate inside. However, the surveillance video shows they ordered take out. Everett testified in a deposition that he saw Hudson drive away from the restaurant in a silver car. Everett also told 911 he thought the robber may have fled to a nearby hotel, but the State did not put forth any other evidence to corroborate these statements. Hudson also notes that Officer Mennonno recorded Everett describing the suspect as between 6'3" and 6'4" and weighing between 200 and 220 pounds. However, Hudson is only 5'9" and weighed less than 200 pounds at the time of the crime. Additionally, Hudson emphasizes his trip to Atlanta was a preplanned vacation rather than evidence of flight and notes Everett used a derogatory term to describe Webster to police. To the extent these facts were relevant to whether Hudson committed armed robbery,

they were items for the jury to consider during deliberation. It is the province of the jury to weigh the evidence and resolve any discrepancies or conflicting testimony. *Smedley v. State*, 561 N.E.2d 776, 782 (Ind. 1990). We will not reweigh the evidence or assess the credibility of witnesses. *Burns v. State*, 91 N.E.3d 635, 640-41 (Ind. Ct. App. 2018). Consequently, we decline Hudson's invitation to reweigh the evidence and hold the State presented sufficient evidence to sustain Hudson's conviction. *See id*. at 641 (appellate court cannot reweigh evidence or judge credibility of witnesses).

## Conclusion

[11] The State presented sufficient evidence to support Hudson's conviction of armed robbery. A reasonable juror could credit Everett's testimony over the testimony of Webster and Guyette. Moreover, restaurant surveillance footage and cell phone tower records indicate Hudson was near the restaurant at the time of the crime. Therefore, we affirm.

[12] Affirmed.

Najam, J., and Bailey, J., concur.